O'GORMAN, J., not voting.

---

(54 App. Div. 111.)

PEOPLE v. CHANDLER.

(Supreme Court, Appellate Division, Second Department. October 19, 1900.)

CONSPIRACY—CONVICTION—EVIDENCE—SUFFICIENCY.

> On December 13th, W. and A., in the borough of Manhattan, printed a large number of posters requesting the public to boycott the Sun. For several months the stereotypers of the Sun had been on strike. On the evening of December 14th defendant was arrested in the act of put-ting up three of these posters in Brooklyn. Defendant was 16 years old, living and working in Brooklyn, and both he and his mother testified that he picked up the posters in the street, just before his arrest, and put them up "for fun." There was no evidence that defendant was ac-quainted with his alleged co-conspirators W. and A., or that he was one of the striking employés of the Sun. *Held*, that the evidence was insuffi-cient to sustain a conviction.

Appeal from court of special sessions, Richmond county.

George Chandler was convicted of conspiracy, and appeals. Re-versed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Robert Goeller (Richard C. Bunzl, on the brief), for appellant.

Franklin Bartlett, for the People.

WOODWARD, J. The appellant was convicted by and before the court of special sessions of the Second division of the city of New

York on the 21st day of March, 1900, of the crime of conspiracy, and sentenced to pay a fine of $50, and in default of payment thereof to stand committed to the Kings county jail 25 days. The crime charged in the information upon which the appellant was arrested and brought to trial, and of which he has been convicted, is a violation of subdivision 5 of section 168 of the Penal Code of the state of New York, in that he did unlawfully, and with criminal intent, conspire and confederate together with one Billy Peele Willett and one Willis H. Abbott to do and commit a criminal act, to wit, to injure the Sun Printing & Publishing Association and its property, and to prevent the said Sun Printing & Publishing Association from exercising its lawful trade and business or calling by threats and intimidation, and by interfering and threatening to interfere with the property and business belonging to the said Sun Printing & Publishing Association, and with the use or employment thereof, by publishing and circulating and posting up in public places, exposed to the public gaze, certain menacing and threatening and intimidating labels or pasters of and concerning the said Sun Printing & Publishing Association. The overt act charged to have been committed in pursuance of this conspiracy is that the appellant and his alleged co-conspirators did "publish, circulate, and post up in public places, exposed to the public gaze, certain menacing, threatening, and intimidating labels or pasters of and concerning the said the Sun Printing & Publishing Association in the following words:

"'It is illegal to
"BOYCOTT THE SUN.
"BOYCOTT THE SUN.
"BOYCOTT THE SUN.'"

The only evidence directly or indirectly connecting the appellant with the commission of this offense is, briefly, the following: That on the 14th of December, 1899, a police officer discovered the defendant, who is a boy about 16 years of age, engaged in the act of putting up or pasting up three pasters or posters in the form of labels having printed thereon the above-quoted words,—one on a lamp-post, and two on the elevated railroad pillars at the corner of Myrtle avenue and Throop avenue, in the borough of Brooklyn; that at that time and since August 5, 1899, nearly the entire force engaged in the stereotyping room of the New York Sun had been on what is known as a "strike," and had ceased to work for the Sun Printing & Publishing Association; and that on the day before the police officer saw the accused paste up these posters or labels another police officer had had an interview with Billy Peele Willett and Willis H. Abbott at their printing establishment known as the Willett Press, at 142 Fifth avenue, in the borough of Manhattan, in which they admitted that they had printed 300,000 such pasters, and also 250 envelopes and 3,000 circulars, directing certain unknown persons to distribute such pasters, and to cause them to be pasted up. The foregoing is all of the evidence given by the people. The appellant, Chandler, and his mother were sworn as witnesses in his behalf on his trial, and testified that he picked up four of these labels on the night of December 14, 1899, at Throop avenue and Hart street, and had pasted three of

them up, as the appellant testified, "for fun," when, to quote the language of the learned counsel for the people, "he was caught red-handed" by the police officers.

Elaborate arguments have been made, both orally and in the briefs, by counsel for the appellant and for the people, upon the question as to whether a conspiracy to post or paste up stickers or pasters containing such language as these pasters did, followed by the overt act of one of the co-conspirators of so posting or pasting them up to the public view, constitutes a criminal offense within the meaning of subdivision 5 of section 168 of the Code of Criminal Procedure. In the view that we take of this case, discussion of this question on our part, however interesting and important, is wholly unnecessary, for the reason that we are of opinion that there was no evidence given in the court below which would justify our affirmance of the conviction of the appellant of the crime of conspiracy. We have stated above all of the evidence in the case by which it was attempted to establish the guilt of the appellant. The learned counsel for the people insists that, inasmuch as Willett and Abbott printed these pasters on the 13th of December, and the boy Chandler was found pasting them up on the evening of the 14th of December, and the language contained therein might be construed to have been intended to injuriously affect the calling and business of the Sun Printing & Publishing Association, a court of justice would have the right to infer that the defendant had acted as he did in pursuance of an unlawful combination and conspiracy with Willett and Abbott. The very statement of this proposition shows it to be untenable, and discloses the danger to the community which might obtain hereafter if any such rule as this was declared to be the law. There is not a particle of evidence in the case that the boy Chandler was even acquainted with the alleged co-conspirators, Willett and Abbott, or even that he was one of the strikers in the New York Sun office. The truth, on the contrary, is that he worked in a nonunion office somewhere in Brooklyn, while the Sun office is located in the borough of Manhattan. On the other hand, the testimony of the defendant himself, and of his mother, was wholly uncontradicted by proof of a single fact or circumstance tending to militate against it, and is that the boy found the pasters or labels on the street a few minutes before he pasted them up. The conviction of the appellant under such circumstances as those disclosed by the evidence in this case was not justifiable, and it must be reversed, and the proceedings against him dismissed. All concur, except BARTLETT, J., taking no part.